IN THE UNITED STATES DISTRICT COURT FOR THE

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SATINDERPAL SINGH,<br><br>          Plaintiff,<br><br>     vs.<br><br>DON RIDING, Field Office Director, U.S. Citizenship and Immigration Services,<br><br>          Defendant. | No. CV-F-07-1198 OWW/SMS<br><br>MEMORANDUM DECISION GRANTING DEFENDANT'S MOTION TO DISMISS (Doc. 16) AND DISMISSING ACTION AS MOOT |

On August 15, 2007, Plaintiff filed a Complaint for Declaratory Judgment and Injunction against Don Riding, Field Office Director, U.S. Citizenship and Immigration Services. The Complaint alleges that Plaintiff is a citizen and national of India; that Plaintiff was granted asylum on July 21, 1999 by an Immigration Judge; that, on "September 18, 2000, 1998", Plaintiff filed an application to adjust status under INA § 209(b), 8 U.S.C. § 1159(b), with USCIS's predecessor, the INS, at Lincoln, Nebraska; that, on October 20, 2005, Defendant exercised

1

jurisdiction over Plaintiff's application to adjust status and conducted an administrative interview at the Fresno Office; and that Defendant has filed and continues to fail to adjudicate Plaintiff's application.  The Complaint prays for declaratory and injunctive relief:

> 1. Declaring that defendant has unlawfully withheld and delayed adjudication of Plaintiff's application to adjust status;
>
> 2. Enjoining Defendant to complete his review and adjudication of Plaintiff's application to adjust status forthwith;
>
> 3. Awarding plaintiff costs and reasonable attorney fees incurred in this action.
>
> 4. Granting such other and further relief as may be appropriate.

Defendant moves to dismiss the Complaint as moot.  Attached to Defendant's motion is a copy of the December 11, 2007 decision denying Plaintiff's application to adjust status:

> On September 22, 2000, the applicant, Satinderpal Singh, filed the Form I-485, Application to Register Permanent Residence or Adjust Status, under Section 209(b) of the Immigration and Nationality Act, as amended ('The Act').  The applicant is a 31-year-old native and citizen of India.  The applicant last entered the United States in August of 2007.
>
> The applicant is seeking adjustment of status to legal permanent residence pursuant to Section 209(b) of the Act.  Section 209(b) of the Act provides in pertinent part:
>
>> The Secretary of Homeland Security or the Attorney General in the Secretary's or the Attorney General's discretion and under such regulations as the Secretary or the Attorney General may prescribe, may

> adjust to the status of an alien lawfully admitted for permanent residence the status of any alien granted asylum ....

Furthermore, Section 212(a)(6)(C)(i) of the Act provides in pertinent part:

> In General - Any alien who, by fraud or wilfully misrepresenting a material fact seeks to procure (or has sought to procure or has procured) a visa, other documentation, or admission into the United States or other benefits provided under this Act is inadmissible.

Review of the record reveals the applicant filed for asylum on December 11, 1998. The applicant orally testified at his asylum interview and submitted written statements in his asylum application that he was not a member of Barba Khalsa International, but that he had supported them. It should be noted that Barba Khalsa International appears on the Department of State's Terrorist Exclusion List. Therefore, this claim for asylum was not granted as the applicant is barred by statute from a grant of asylum due to evidence the applicant engaged in terrorist activities. The applicant was referred to the Immigration Judge on January 30, 1999 on the grounds on having engaged in support of terrorist activity.

The applicant further testified that in March of 1992 the applicant allowed militants of Barba Khalsa to stay in his fields where he provided them with food and water. He stated that he was not forced to provide them with such support, that he did so freely and willingly because he supported their cause to establish an independent Khalistan. As a result of such actions, the applicant was allegedly persecuted by local government authorities.

The applicant was interviewed on October 20, 2005 and again on November 18, 2007 in regards the filed adjustment of status

**application. The applicant was placed under oath at both of these proceedings. During the interview of November 14, 2007, the applicant was asked about his involvement with Barba Khalsa and his testimony given during his asylum interview on January 6, 1999. The applicant stated he had never been a member of, or has never been affiliated in any way with Barba Khalsa such as volunteering, recruiting members for, fundraising, providing services free of charge, providing food or shelter, or transportation. However, this statement under oath on November 14, 2007 directly contradicts the applicant's statement during the asylum interview on January 6, 1999. We find the applicant has therefore given false statements under oath in an attempt to procure a benefit under the Immigration and Nationality Act.**

**In addition, Title 8 Code of Federal Regulations 209.2 does not contemplate that all aliens who meet the required legal standards will be granted adjustment of status to that of a lawful permanent resident, since the grant of an application for adjustment is a matter of discretion and of administrative grace, not mere ineligibility. An applicant has the burden of showing that discretion should be exercised in his favor.**

**Where adverse facts are present in any given application for adjustment of status, it may be necessary for the applicant to offset these by showing unusual or even outstanding equities. Generally, favorable factors such as family ties, hardship, and length of residence in the United States can be considered as countervailing factors meriting the favorable exercise of administrative discretion. In the absence of adverse factors, adjustment will ordinarily be granted, still as a matter of discretion. However, an absence of major adverse factors alone does not warrant the grant of adjustment of status.**

**Additionally, the Attorney General in <u>Matter of Jean</u>, 23 I&N Dec 373 (A.G. 2002), stated:**

> 'From its inception, the United States has always been a nation of immigrants; it is one of our greatest strengths. But aliens arriving at our shores must understand that residency in the United States is a privilege, not a right.'
>
> The applicant has little positive equities in the United States. The applicant is single and has no children. Any positive equities the applicant may have, are not sufficiently meritorious to outweigh the negative factors listed above. Thus, the applicant has not overcome the burden of demonstrating to USCIS that he warrants a favorable exercise of discretion.
>
> For this reason, your application for adjustment of status is denied as a matter of discretion.

Plaintiff argues that the Complaint is not moot because Defendant's responsibility to adjudicate the application to adjust status implies that he is required to do so lawfully. Plaintiff contends that Defendant has not done so. Plaintiff asserts that, if appropriate, he will amend the Complaint to allege that Defendant has not lawfully adjudicated the application and amend the prayer to seek lawful adjudication of the application.

The issue is whether Defendant's decision denying Plaintiff's application to adjust status is judicially reviewable. Defendant argues that it is not and Plaintiff argues that it is.

Defendant argues that judicial review is barred by 8 U.S.C. § 1252(a)(2)(B)(i). Section 1252(a)(2)(B) provides:

> Notwithstanding any other provision of law (statutory or nonstatutory), including

>section 2241 of Title 28, or any other habeas corpus provision, and sections 1361 and 1651 of such title, and except as provided in subparagraph (D), and regardless of whether the judgment, decision, or action is made in removal proceedings, no court shall have jurisdiction to review -
>
>>(i) any judgment regarding the granting of relief under section 1182(h), 1182(i), 1229b, 1229c, or 1255 of this title, or
>>
>>(ii) any other decision or action of the Attorney General or the Secretary of Homeland Security, other than the granting of relief under section 1158(a) of this title.

8 U.S.C. § 1255 pertains to the adjustment of status of a nonimmigrant to that of a person admitted for permanent residence.

Here, Plaintiff did not apply for adjustment of status under Section 1255. Rather, Plaintiff, who has been granted asylum pursuant to 8 U.S.C. § 1158, applied for adjustment of status under 8 U.S.C. § 1159.

Section Section 1159(a) sets forth the criteria and procedures applicable for admission as an immigrant for an alien who has been admitted to the United States under 8 U.S.C. § 1157. Section 1159(b), upon which Plaintiff relies, provides in pertinent part:

>The Secretary of Homeland Security or the Attorney General, in the Secretary's or the Attorney General's discretion and under such regulations as the Secretary or the Attorney General may prescribe, may adjust to the status of an alien lawfully admitted for permanent residence the status of any alien granted asylum who -

6

>    (1) applies for such adjustment,
>
>    (2) has been physically present in the United States for at least one year after being granted asylum,
>
>    (3) continues to be a refugee within the meaning of section 1101(a)(42)(A) of this title ...,
>
>    (4) is not firmly resettled in any foreign country, and
>
>    (5) is admissible (except as otherwise provided under subsection (c) of this section) as an immigrant under this chapter at the time of examination for adjustment of such alien.

**8 U.S.C. § 1159(c) provides:**

>    The provisions of paragraphs (4), (5), and (7)(A) of section 1182(a) of this title shall not be applicable to any alien seeking adjustment of status under this section, and the Secretary of Homeland Security or the Attorney General may waive any other provision of such section (other than paragraph (2)(C) or subparagraph (A), (B), (C), or (E) of paragraph (3)) with respect to such an alien for humanitarian purposes, to assure family unity, or when it is otherwise in the public interest.

**8 C.F.R. § 209.2 pertains to the adjustment of status of aliens granted asylum.  Section 209.2(a) sets forth the requirements for eligibility for adjustment of status.  Section 209.2(f) provides in pertinent part:**

>    No appeal shall lie from the denial of an application by the director but such denial will be without prejudice to the alien's right to renew the application in proceedings under part 240 of this chapter.

**8 C.F.R. Part 240 pertains to proceedings to determine removability of aliens in the United States.**

Plaintiff argues that Section 1252(a)(2)(B)(i) does not bar judicial review of the denial of his application to adjust status. Plaintiff contends that Section 1252(a)(2)(B)(i) grants discretionary authority to adjust the status of an alien who is, *inter alia*, admissible as an immigrant at the time of examination for adjustment of status. Plaintiff asserts:

> Defendant found that plaintiff was inadmissible under 8 U.S.C. 212(a)(6)(C)(i). Thus, the Complaint herein does not challenge a discretionary decision by defendant [sic]. Defendant does not have the authority to exercise discretion because he determined that plaintiff was inadmissible and therefore ineligible for the discretionary relief of adjustment of status. Rather, the complaint seeks review [sic] of whether defendant committed legal error in the determination that, according to defendant, rendered him ineligible for adjustment of status, an issue reviewable under 5 U.S.C. § 702.

Plaintiff contends that the issue of whether Defendant lawfully adjudicated his application to adjust status from that of an asylee to that of a lawful permanent resident is a final agency action for which there is no other adequate remedy "notwithstanding 8 C.F.R. 209(f) because Plaintiff is not removable."

At the hearing, Defendant conceded that Plaintiff's application for adjustment of status under Section 1159 is not statutorily prohibited from judicial review by Section 1252(a)(2)(B)(i).

There is no question that a district court does not have jurisdiction to review the discretionary denial of adjustment of

8

status under Section 1255.  *See Onikoyi v. Gonzales*, 454 F.3d 1, 3 (1st Cir.2006); *Hadwani v. Gonzales*, 445 F.3d 798, 800 (5th Cir. 2006) and cases cited therein.

In *Singh v. Gonzales*, 413 F.3d 156 (1st Cir.2005), Singh, citizen of India, entered the United States without being admitted or paroled on October 31, 1997.  In January 1998, Singh filed an application for asylum, withholding of removal, and relief under the Convention Against Torture (CAT).  In his application, he claimed persecution on account of his Sikh religion and his involvement with the Akali Dal Mann Party, a Sikh political organization.  At hearings before the INS in San Francisco, Singh provided evidence that he was twice beaten and arrested by the Indian police because of his involvement with the Akali Dal Mann Party and alleged that Indian authorities continued to seek him after he left India and that he would be harmed or killed if he returned.  413 F.3d at 157-158.  The IJ determined that Singh's testimony was not credible and that the documentary evidence did not sustain Singh's burden.  *Id*. at 158. The IJ denied all applications and ordered Singh removed to India.  Singh appealed to the BIA.  During the pendency of the appeal, Singh moved to Massachusetts and received an approved I-140 form filed on his behalf by the owner of a restaurant at which Singh was allegedly a cook.  In 2002, Singh filed a motion with BIA seeking remand of his case to the IJ in Boston so that he could file an application for adjustment of status under 8 U.S.C. § 1255(i).  *Id*.  The BIA granted the motion.  An

immigration hearing was held in Boston in 2003 to consider Singh's application for adjustment of status. The Boston IJ found that Singh had provided false testimony and information both in connection with his application for asylum before the San Francisco IJ and adjustment of status before the Boston IJ and that, therefore, he was inadmissible to the United States pursuant to 8 U.S.C. § 1182(a)(6)(C)(i). Based on this finding of inadmissibility, the IJ denied Singh's application for adjustment of status. On appeal, the First Circuit ruled in pertinent part that federal courts have jurisdiction to review the denial of an application for adjustment of status under a limited circumstance:

> The United States correctly does not challenge our jurisdiction to review the denial of the application for adjustment status under 8 U.S.C. § 1252(a)(2)(B)(i). This provision limits judicial review of discretionary denials of adjustment of status applications. In this case, the IJ denied Singh's application based on a finding that he did not meet the statutory prerequisite of admissibility. This is not a discretionary denial; it is mandated by statute. 8 U.S.C. § 1252 does not limit our review over these types of denials.

413 F.3d at 160 n.4.

In *Onikoyi v. Gonzales*, *supra*, 454 F.3d 1, Onikoyi, a citizen of Nigeria, first entered the United States with his wife in 1981 and overstayed his visa. Onikoyi was deported under an alias in 1986 and later illegally reentered the United States. Onikoyi then applied for adjustment of status under the government's amnesty program. Onikoyi did not inform the INS

10

1  that he had been previously deported, which would have signaled
2  that he was ineligible for adjustment of status.  In 1990, the
3  INS adjusted Onikoyi's status to that of permanent lawful
4  resident.  In 1993, Onikoyi was arrested for theft, which arrest
5  alerted the INS that Onikoyi had previously been deported under
6  an alias.  Onikoyi was charged and convicted of illegal reentry.
7  In 1994, the INS issued an Order to Show Cause charging him with
8  deportability based on the conviction and his illegal status.
9  While the deportation proceedings were pending, Onikoyi's wife
10 became a citizen.  She filed an I-230 spousal petition on his
11 behalf so that he could seek adjustment of status.  During his
12 deportation hearing, Onikoyi applied for adjustment of status and
13 discretionary waiver of inadmissibility.  In 2004, the
14 Immigration Judge and later the BIA denied his application for
15 adjustment of status and waiver of inadmissibility as a matter of
16 discretion, emphasizing that Onikoyi had deceived government
17 officials on several occasions and that the equities were not in
18 his favor.  454 F.3d at 2.  The First Circuit held that it did
19 not have jurisdiction to review the discretionary denial of
20 adjustment of status, noting that it did have jurisdiction
21 pursuant to *Singh v. Gonzales*, *supra*, to review whether an
22 applicant is statutorily ineligible for discretionary relief.
23 454 F.3d at 3.  The First Circuit held:

> Onikoyi attempts to cast the arguments in his
> petition for review as questions of law,
> rather than challenges to the IJ's
> discretionary determinations in his case.  He
> argues that the IJ found him statutorily

> ineligible for discretionary relief and that she 'erred as a matter of law' by denying him a waiver of inadmissibility, determining that he had not demonstrated extreme hardship to his citizen spouse and children and finding no other favorable equities in his case.
>
> Onikoyi mischaracterizes the IJ's opinion. The IJ made clear, for each form of discretionary relief she was denying, that her decision was based on her exercise of discretion. The IJ did not conclude that Onikoyi was statutorily ineligible for a waiver of inadmissibility or adjustment of status. Instead, the IJ weighed the equities and explained that '[w]hen a person has the type of criminal history that [Onikoyi] has and the tendency to lie to authorities whenever possible, [relief] should not be granted to him in the proper exercise of this [c]ourt's discretion.' Although the IJ considered Onikoyi's arguments regarding the family hardship, the IJ concluded that Onikoyi 'continued to defraud the United States, and I haven't heard any excuse ... [A]ccordingly, respondent's application for adjustment of status, the [] waiver, and permission to return to the United States after being previously deported are all hereby denied.' The BIA adopted and affirmed the IJ's decision to deny his applications for relief 'as a matter of discretion.' Thus, we do not have jurisdiction to review the BIA's affirmance of the discretionary decision of the IJ in this case.

454 F.3d at 3-4.

Plaintiff argues that *Onikoyi* has no application to the resolution of this motion because *Onikoyi* did not involve denial of an application for adjustment of status under Section 1255.

Plaintiff cites no authority that the denial of his application is judicially reviewable. Although judicial review is not precluded by Section 1252(a)(2)(B)(i), the question arises whether judicial review is precluded by Section

1252(a)(2)(B)(ii).

"[I]t is well established in [the Ninth Circuit] that § 1252(a)(2)(B)(ii) 'applies only to acts over which a statute gives the Attorney General pure discretion unguided by legal standards or statutory guidelines,' ...." *Oropeza-Wong v. Gonzales*, 406 F.3d 1135, 1142 (9th Cir.2005). "For a statutory provision to strip [the Ninth Circuit] of jurisdiction under § 1252(a)(2)(B)(ii), the provision must specify that 'the right or power to act is entirely within [the Attorney General's] judgment or conscience.'" *Id.*, citing *Spencer Enterprises., Inc. v. United States*, 345 F.3d 683, 690 (9th Cir.2003). *See also San Pedro v. Ashcroft*, 395 F.3d 1156 (9th Cir.2005):

> In *Spencer Enterprises, Inc. v. United States*, 345 F.3d 683 (9th Cir.2003), we held that § 242(a)(2)(B)(ii) refers to 'acts the *authority* for which is *specified* under the INA to be discretionary.' *Id.* at 689. The specified discretion must be pure and unguided by legal standards. *Id.* at 689-90. Section 237(a)(1)(H)(removal 'may, in the discretion of the Attorney General, be waived for any alien ... who [meets certain eligibility requirements]'). Although there are nondiscretionary eligibility elements that must be met under § 237(a)(1)(H), 'the ultimate authority whether to grant [the waiver] rests entirely in the discretion of the Attorney General.' *Spencer*, 345 F.3d at 690; *see also Matsuk v. INS,* 247 F.3d 999, 1002 (9th Cir.2001). Accordingly, we have jurisdiction only to review the statutory eligibility elements under § 237(a)(1)(H) and lack jurisdiction to review the discretionary denial of the waiver.

Because the discretion accorded by Section 1159(b) is circumscribed by statutory guidelines, judicial review is not

13

precluded by Section 1252(a)(2)(B)(ii).

Consequently, a limited judicial review of the denial of Plaintiff's application is not precluded by statute or case law.

At the hearing, however, Plaintiff advised that he has moved to reopen his application to adjust status on the ground that his misprepresentation was not material and to have the ground for his inadmissibility waived.  Because of the pending motion to reopen, any judicial review is premature.  The most efficient way in which to proceed is to dismiss as moot this action as moot without prejudice to Plaintiff's filing a subsequent action for judicial review, if appropriate, after Plaintiff's motion to reopen is resolved.  Requiring Plaintiff to amend the Complaint to seek judicial review and then hold the action in abeyance pending resolution of the motion to reopen is inefficient and unjustified.

## CONCLUSION

For the reasons stated above:

1.  Defendant's motion to dismiss is GRANTED;

2.  Counsel for Defendant shall prepare and lodge a form of order setting forth the ruling in this Memorandum Decision within five (5) court days following the date of service of this decision.

IT IS SO ORDERED.

**Dated:   January 16, 2008**              /s/ Oliver W. Wanger
                                           UNITED STATES DISTRICT JUDGE